UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK ANDERSEN, et al.,

    Plaintiffs,

v.

GRISWOLD INTERNATIONAL, LLC, et al.,

    Defendants.

Case No. 14-cv-02560-EDL

**ORDER ON MOTIONS TO DISMISS AND TO SEVER**

Re: Dkt. Nos. 25, 46

Defendants bring these motions to dismiss and to sever individual Plaintiff groups into separate actions. The complaint divides Plaintiffs into eleven groups based on their association with the eleven franchises at issue. For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss, and DENIES Defendants' motion to sever without prejudice.

**I. RELEVANT FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

Plaintiffs are residents of California and franchisees of Defendant Griswold International, Inc. ("Defendant Griswold"), a franchisor of "non-medical home care services for persons in need of such services – generally, senior citizens and disabled persons." (Cmplt. ¶¶ 1, 3.) Plaintiffs allege that Defendant Griswold made a series of misrepresentations in connection with the marketing of its franchises, including that: (1) "it had a 'unique' 'proven' system under which the persons providing such care . . . operated as independent contractors, so that neither the [c]lients nor the franchisee was responsible for taxes or compliance with wage and hour or other labor or employment laws" ("IC Model") (id. ¶ 1); (2) it "offered franchise owners 'full support with licensing and state specific compliance paperwork'" and that it "was 'engaged politically both at the state and federal levels'" (id. ¶ 20b); (3) it "was competent to and did provide guidance in order to keep franchisees compliant with state regulations" (id. ¶ 20e); and (4) competitors' allegations that the IC Model was problematic were based on "misinformation" (id. ¶ 20f). Based on these and other misrepresentations, Plaintiffs allege that, at various times, they entered into franchise agreements with Defendant Griswold. (Id. ¶ 22.)

In November 2013, Plaintiffs allege that they began "to discover that the representations made by [Defendant Griswold] and other Defendants had been false, incomplete, half-truths or misleading." (Id. ¶ 26.) Furthermore, "[a]t the end of 2013, the California Legislature passed and the Governor signed, AB 241, a law that applied to non-medical home care workers and that, among other things, required that they be paid overtime." (Id. ¶ 27.) As a result of the passage of AB 241, Plaintiffs allege that Defendant Griswold abandoned the IC model by requiring that franchisees become "employment agencies" under California law. (Id. ¶ 32.) They allege that this constitutes "a material modification [of their franchise agreements] that substantially changes the business rights of the franchisees [and] constitutes a material breach of the franchise agreements." (Id. ¶ 35.)

On June 3, 2014, Plaintiffs filed their complaint, alleging claims for: (1) violation of the California Franchise Investment Law ("CFIL"); (2) Fraud; (3) Negligent Misrepresentation; (4) Fraudulent Concealment; (5) Violation of the California Franchise Relations Act ("CFRA"); and (6) Breach of Contract. On August 13, 2014, Defendants moved to dismiss. On September 19, 2014, the Jenkins Plaintiffs voluntarily dismissed all claims without prejudice (Dkt. 42 (Notice of Voluntary Dismissal)) and agreed to arbitrate their claims (Opp. at 6). Furthermore, the Luders and Redmon Plaintiffs voluntarily dismissed their CFRA claim. (Dkt. 42; Opp. at 6.) On September 24, 2014, Defendants moved to sever the remaining Plaintiffs' claims into separate actions.

## II. MOTION TO DISMISS

### A. Standards of Review

All Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Additionally, Defendants Graham Weihmiller, Thomas Monaghan, Diane Walker, Patrick Spaan, Greg Bast, and Michael Magid ("Individual Defendants") move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The reviewing

court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Furthermore, a court also need not "accept as true allegations that contradict matters properly subject to judicial notice." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff need only make a prima facie showing of jurisdictional facts. Id. The Court must take uncontroverted allegations in the complaint as true, id., but may not assume the truth of allegations that are contradicted by affidavit. Data Disc, Inc. v. Sys. Tech. Assoc., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977) ("If only one side of the conflict was supported by affidavit, our task would be relatively easy, for we may not assume the truth of allegations in a pleading which are contradicted by affidavit."). Moreover, the Court need not assume the truth of conclusory allegations. Nicosia v. De Rooy, 72 F. Supp. 2d 1093, 1097 (N.D. Cal. 1999) (Chesney, J.). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." Schwarzenegger, 374 F.3d at 800. However, the plaintiff's evidence must be admissible. Nicosia, 72 F. Supp. 2d at 1097.

**B. Discussion**

**1. Plaintiffs have not adequately alleged personal jurisdiction over the Individual Defendants**

In order for specific jurisdiction to be established:

> "(1) the nonresident defendant must purposefully direct [her or] his activities or consummate some transaction with the forum or residents thereof; or perform some act by which [she or] he purposefully avails [herself or] himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of

3

> or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable."

Stewart v. Am. Ass'n of Physician Specialists, 2014 U.S. Dist. LEXIS 67960, at *11 (C.D. Cal. May 15, 2014) (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). Additionally, where Plaintiff has sued both a corporation and its officers, the fiduciary-shield doctrine generally applies. Under that doctrine, "[t]he mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well." Colt Studio, Inc. v. Badpuppy Enter., 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999) (citing Calder v. Jones, 465 U.S. 783, 790 (1984) and Davis v. Metro Prods., Inc., 885 F.2d 515, 521 (9th Cir.1989)). Indeed, "[f]or jurisdictional purposes, the acts of corporate officers and directors in their official capacities are the acts of the corporation exclusively and are thus not material for purposes of establishing minimum contacts as to the individuals." Id. There are two exceptions: "the corporate form may be ignored (1) where the corporation is the agent or alter ego of the individual defendant, or (2) where a corporate officer or director authorizes, directs, or participates in tortious conduct." Stewart, 2014 U.S. Dist. LEXIS 67960, at *13 (citations omitted).

Plaintiffs' complaint suffers from a number of jurisdictional problems with respect to the Individual Defendants. As an initial matter, Plaintiff must demonstrate that "the claim . . . arises out of or relates to the defendant's forum-related activities." Lake, 817 F.2d at 1421. Significantly, "[e]ach defendant's contacts with the forum State must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984). However, the complaint does not specify each Individual Defendant's contacts with each Plaintiff group and the forum. (See Cmplt. ¶ 20.) Indeed, in many cases Plaintiffs fail to allege *any* contact between individual Plaintiff groups and various Individual Defendants. (See id.) For example, Plaintiffs only allege that the Luders Plaintiffs had contact with Defendants Walker and Spaan. The Luders Plaintiffs have therefore failed to show how the Court has personal jurisdiction with respect to their claims against the other four Individual Defendants. The same is true for all of the Plaintiff groups, as Plaintiffs do not allege that any of the Plaintiff groups had contact with all six Individual Defendants. (Id.)

Furthermore, Plaintiffs' allegations pertaining to jurisdiction over the Individual Defendants, which mainly pertain to emails and in person meetings, are too vague to support

4

personal jurisdiction. For example, Plaintiffs do not allege where the meetings took place, who attended them, and if they were just targeted towards California franchisees or if they were more general. Without these details, the Court cannot determine whether jurisdiction exists. This case is similar to Burgo v. Lady of Am. Franchise Corp., 2006 WL 6642172 (C.D. Cal. May 4, 2006), where Plaintiffs failed to allege personal jurisdiction over an employee of a franchisor who allegedly conducted training sessions that plaintiffs attended and who spoke at a "Discovery Day." Id. at *5. Without allegations that the training sessions had occurred in California, or that the sessions were specifically geared towards California franchisees, the Court held that personal jurisdiction could not be asserted over the individual defendant. Id. at *6-7. Consequently, the Court dismisses Plaintiffs' claims against the Individual Defendants, with leave to amend.

### 2. Plaintiffs' CFIL claims are not barred by the statute of limitations

The CFIL provides that it is unlawful to "offer or sell a franchise . . . by means of any written or oral communication . . . which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." Cal. Corp. Code § 31201. The statute provides a statute of limitations of "two years after the violation upon which it is based, expiration of one year after the discovery by the plaintiff of the facts constituting such violation, or 90 days after delivery to the franchisee of a written notice disclosing any violation . . . whichever shall first expire." Cal. Corp. Code § 31304. Because the purpose of the CFIL is to "provide the prospective franchisee with information necessary to make an intelligent decision regarding franchises being offered," claims for CFIL violations accrue "at the latest" when a plaintiff "sign[s] the franchise agreement." Wolsey, Ltd. v. Foodmaker, Inc., 1996 WL 33333427, at *4 (S.D. Cal. Aug. 8, 1996); see also G.C. & K.B. Investments, Inc. v. Komarczyk, 2006 WL 194268, at *3 (N.D. Cal. Jan. 23, 2006) (Chesney, J.). Thus, CFIL claims are subject to an absolute "maximum limitations period of two years" from the date the franchise agreement was signed and are not subject to tolling. Komarczyk, 2006 WL 194268, at *3.

Defendants make two statute of limitations arguments. First, Defendants argue that the Jenkins, Redmon and Luders Plaintiffs' CFIL claims are barred by the two-year statute of

5

limitations. This argument is moot because those Plaintiffs withdrew their CFIL claims.

Second, Defendants' argue, citing Juarez v. Jani-King California, 2012 WL 177564, at *6 (N.D. Cal. Jan. 23, 2012) (Conti, J.), that the statute of limitations begins to run "after one has notice of circumstances sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." Id. (quoting Briskin v. Ernst & Ernst, 589 F.2d 1363, 1367 (9th Cir. 1978). Pointing to the widespread publicity about the debate on AB 241 and predecessor bills, Defendants argue that Plaintiffs' CFIL claims are barred by a one-year statute of limitations because they "knew or should have known" of the alleged misrepresentations regarding the viability of the IC Model. (Mot. at 9.) However, the quoted passage from Juarez pertains to fraud, rather than a CFIL violation. The CFIL statute does not contain a "reasonably prudent person" provision. See Cal. Corp. Code § 31304 (providing for expiration of CFIL claims from "one year after the discovery by the plaintiff of the facts constituting such violation"); cf. People ex rel. Dep't of Corporations v. SpeeDee Oil Change Sys., Inc., 95 Cal. App. 4th 709, 724-27 (2002) (applying strict statutory construction to interpretation of the CFIL statute of limitations while rejecting an argument that the statute allows for the tolling that is applicable to common law fraud claims). Thus, the CFIL's one year limitations period is triggered by actual "discovery by the plaintiff," not constructive notice. See Cal. Corp. Code § 31304. Plaintiffs have alleged that they were not "at the time they purchased their franchise, knowledgeable about the non-medical home care industry, about franchising, or about the classification of workers as independent contractors or employees." (Cmplt. ¶ 20.) Plaintiffs have also alleged that "only in November 2013 did they begin to discover that the representations made by [Defendant Griswold] and other Defendants had been false, incomplete, half-truths or misleading." (Id. ¶ 26.)[1] These allegations are sufficient to render Plaintiffs' CFIL claims timely.

**3. Plaintiffs' fraud, negligent misrepresentation and fraudulent concealment claims are not preempted by the CFIL**

---

[1] Defendants' argument that the Anderson, Howland, and McKaig Plaintiffs had actual knowledge of the misrepresentations because they were aware of concerns that the Jenkins Plaintiffs' had regarding the IC Model is unpersuasive. (Reply at 3.) The complaint merely alleges that these Plaintiffs were told not to contact the Jenkins Plaintiffs.. (See Cmplt. ¶¶ 21(a), (e), & (h).)

6

The CFIL provides that:

> Except as explicitly provided in this chapter, no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this law or any rule or order hereunder. Nothing in this chapter shall limit any liability which may exist by virtue of any other statute or under common law if this law were not in effect.

Cal. Corp. Code § 31306. Defendants' argue, citing Samica Enterprises, LLC v. Mail Boxes Etc. USA, Inc., 637 F. Supp. 2d 712, 721-22 (C.D. Cal. 2008), that the CFIL preempts Plaintiffs' fraud, negligent misrepresentation, and fraudulent concealment claims because those claims are premised on the same alleged misrepresentations and false statements on which Plaintiffs' CFIL claims are based. Samica interpreted "section 31306 [as] bar[ring] claims that may otherwise be brought under the CFIL – *i.e.*, those claims alleging misrepresentations and omissions covered by such provisions as 31200 and 31201. The [second sentence] is properly read as ensuring that any claims beyond the CFIL's coverage may be brought independently." Samica, 637 F. Supp. at 722. In response, Plaintiffs challenge the Samica court's reasoning, arguing that the second sentence, which clarifies that "[n]othing in this chapter shall limit any liability which may exist . . . under common law," allows Plaintiffs to bring "viable and independent claims from common law fraud, negligent misrepresentation, and fraudulent concealment that set forth plausible claims for relief independent of the CFIL." (Opp. at 9.)

The plain language of the statute preserves preexisting common law and statutes enacted before the CFIL that would apply if it had not been enacted. See SpeeDee Oil, 95 Cal. App. 4th at 724 ("'When interpreting a statute our primary task is to determine the Legislature's intent. . . . In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent.'" (quoting Freedom Newspapers, Inc. v. Orange County Employees Retirement System, 6 Cal. 4th 821, 826 (1993))). Plaintiffs' construction that this provision clarifies that the CFIL does not create any additional civil liability beyond that "explicitly provided in this chapter" gives full effect to both sentences of this provision. Furthermore, this construction is consistent with how courts have interpreted an analogous provision of California's securities laws. See Ugarte v. Atlas Sec., Inc., 2004 WL 670857, at *6 (Cal. Ct. App. Apr. 1,

7

2004) ("Section 25510 provides, 'Except as explicitly provided in this chapter, no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this law or any rule or order hereunder. Nothing in this chapter shall limit any liability which may exist by virtue of any other statute or under common law if this law were not in effect.' By this section's terms, the Corporations Code provisions concerning securities regulation only create a private statutory cause of action when expressly provided in the chapter containing section 25510. On the other hand, the Corporations Code does not interfere with existing common law causes of action." (quoting Cal. Corp. Cord § 25510)). Consequently, Plaintiffs' fraud, negligent misrepresentation, and fraudulent concealment claims are not preempted by the CFIL.

### 4. Plaintiffs have stated a claim for fraud, negligent misrepresentation, and fraudulent concealment

The elements of fraud are: (1) a false representation; (2) knowledge of its falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damages. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003). The elements of negligent misrepresentation are the same except that "the plaintiff need not allege the defendant made an intentionally false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true." Charnay v. Cobert, 145 Cal. App. 4th 170, 184 (2006). Fraudulent concealment requires a showing that: "(1) the defendant concealed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant concealed or suppressed the fact with an intent to defraud; (4) the plaintiff was unaware of the fact and would have acted if he or she had known about it; and (5) the concealment caused the plaintiff to sustain damage." Williamson v. Gen. Dynamics Corp., 208 F.3d 1144, 1156 (9th Cir. 2000)

Defendants first argue that Plaintiffs have failed to state a claim because the alleged misrepresentation regarding the future status of California law is not actionable. See Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n, 366 F.3d 692, 698 (9th Cir. 2004) ("predictions as to future events are ordinarily non-actionable expressions of opinion" (quoting In re Jogert, Inc., 950 F.2d 1498, 1507 (9th Cir.1991))). While correct as a statement of law, the

complaint primarily focuses on numerous misrepresentations as to past and existing facts – not future events. For example, the complaint alleges that the IC Model was a "proven" system that operated under specific federal guidelines that protected the model irrespective of state law, that Defendants were connected politically at both the state and federal levels, and that they were fully licensed and competent to provide guidance on state regulations and compliance paperwork. (Cmplt. ¶ 20.) Furthermore, the complaint alleges that Defendants failed to disclose that they had "considerable doubts as to whether [the IC Model] indeed was viable, and knew that it was being questioned in other jurisdictions." (Id. at ¶ 21g.)

Next, Defendants argue that several of Plaintiffs' allegations amount to non-actionable puffery, such as Plaintiffs' allegations that the model was "proven," that it was led by a "progressive team of experts," and that Defendants were "politically engaged." The Ninth Circuit has held that "generalized, vague and unspecific assertions, constitute[e] mere 'puffery' upon which a reasonable consumer could not rely." Glen Holly Entm't, Inc. v. Tektronix, Inc., 352 F.3d 367, 379 (9th Cir. 2003). Thus, in Glen Holly, the Ninth Circuit found that representations that a version of a software program was "in the last stages of beta testing," was being treated as "high priority," and was being actively developed, were non-actionable puffery. Id. In contrast, a statement that a computer program can "work easily with DWG files created by any version of AutoCAD software" was actionable despite the fact that "work easily" is subjective, because "when viewed as a whole, [the statement] can be viewed as referring to specific and testable characteristics of a product – specifically, that a consumer can work with files produced by '*any version*' of AutoCAD." Autodesk, Inc. v. Dassault Systemes SolidWorks Corp., 685 F. Supp. 2d 1001, 1017-18 (N.D. Cal. 2009) (Alsup, J.) (emphasis in original).

Although some of the alleged misrepresentations here are puffery, Plaintiffs have also alleged a number of specific actionable misrepresentations. For example, Plaintiffs' allegations that Defendant Griswold misrepresented that it provided "full support with licensing and state specific compliance paperwork," that its "[c]aregivers were validated as self-employed, [and] each had obtained his or her own EIN number," that the IC model operated under specific federal guidelines that protected the model regardless of state law, and that Defendant Griswold was

9

1  "competent to and did provide guidance in order to keep franchisees compliant with state
2  regulations," are not puffery because they refer to specific, non-subjective and testable
3  characteristics. See Autodesk, 685 F. Supp. 2d at 1017-18. Plaintiff has thus alleged sufficient
4  actionable misrepresentations to state a claim.

5  Next, Defendants, citing Kilgore v. KeyBank Nat'l Assoc., 712 F. Supp. 2d 939 (N.D. Cal.
6  2010), vacated on other grounds by, 718 F.3d 1052 (9th Cir. 2013), argue that even if the alleged
7  misrepresentations are actionable, Plaintiffs were not as a matter of law entitled to rely on them
8  because the criticism of the IC Model and potential changes in California law were public
9  knowledge. However, unlike here, Kilgore adjudicated a fraud claim under California's unfair
10 competition law, which required the plaintiff to prove that material facts in the defendant's
11 exclusive knowledge were not disclosed. Id. at 952-53 ("'The fraudulent business practice prong
12 of the UCL has been understood to be distinct from common law fraud.'" (quoting In re Tobacco
13 II Cases, 46 Cal. 4th 298, 312 (2009))). For that claim, the court found that the plaintiff could not
14 rely on undisclosed facts which were public knowledge. Id. Here, the elements of Plaintiffs' three
15 claims do not contain this same "exclusive knowledge" requirement. Furthermore, even if they
16 did, Plaintiffs allege that Defendants actively hid criticism of the IC Model from them. (See
17 Cmplt. ¶ 21e ("Magid also told [Plaintiff] Howland in August or September 2012 not to contact
18 [Plaintiff] Christopher Jenkins prior to purchasing the franchise because, upon information and
19 belief, Magid wanted to keep concerns that [Plaintiff] Jenkins had about the IC model hidden from
20 [Plaintiff] Howland.").)

21 Defendants also argue that Plaintiffs have failed to plead with sufficient particularity that
22 Defendants had knowledge of the alleged falsity of the misrepresentations at the time that they
23 were made. However, the complaint specifically points to a series of facts that Plaintiffs allege
24 Defendants knew or should have known. (See Cmplt. ¶ 26.) The complaint also alleges, in detail,
25 who made which misrepresentations to each Plaintiff, along with the approximate time each
26 misrepresentation was made. (See id. ¶¶ 20-21.) Thus, Plaintiffs have pled with sufficient
27 particularity.

28 Finally, Plaintiffs have adequately alleged a nexus between the alleged misrepresentations

and the harm they suffered since they allege that, but for these alleged misrepresentations, they would not have purchased their franchises. (See Opp. at 17; Cmplt. ¶¶ 6, 22.) That it was the California Legislature that ultimately made the IC Model unworkable does not change this analysis because Plaintiffs allege both that Defendants actively dissuaded them from uncovering criticisms of the IC Model and that Defendants represented that the viability of the IC Model did not turn on state law.

### 5. Plaintiffs are not entitled to rescission as a remedy for their CFIL claim

Plaintiffs allege that Defendants violated Section 31201 of the CFIL. The CFIL states that:

> "Any person who violates Section 31201 shall be liable to any person (not knowing or having cause to believe that such statement was false or misleading) who, while relying upon such statement shall have purchased a franchise, *for damages*, unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care and did not know, (or if he had exercised reasonable care would not have known) of the untruth or omission."

Cal. Corp. Code § 31301 (emphasis added). In addition to damages, Plaintiffs also request "rescission of their Franchise Agreements" as a remedy for Defendants' alleged CFIL violations. (Cmplt. ¶ 48.) However, rescission is not a remedy available for a violation of Section 31201. Plaintiffs' arguments that "no place in this section . . . state[s] that damages are the exclusive remedy" and that not allowing rescission "would be counter to the stated intent of the statute" are unpersuasive. (Opp. at 17.) Plaintiffs acknowledge that the purpose of the statute is to prohibit "the sale of franchises where the sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled." (Opp. at 17 (quoting Cal. Corp. Code § 31001).) There is nothing inconsistent between this purpose and providing damages as an exclusive remedy. Furthermore, in contrast to Section 31301, rescission is expressly available as a remedy under another section of the CFIL. See Cal. Corp. Code. § 31300. Consequently, Plaintiffs are not entitled to rescission as a remedy for their CFIL claims.

### 6. Plaintiffs' CFRA claim is dismissed with leave to amend

Plaintiffs allege that Defendants violated the CFRA by wrongfully terminating Plaintiffs' franchise agreements by requiring them to switch from the IC model and by not giving Plaintiffs

11

the required notice and opportunity to cure. (Cmplt. ¶¶ 71-72.) Plaintiffs exclusively seek damages for this violation. (Id. ¶ 73.) However, the CFRA provides that "if a franchisor 'terminates or fails to renew a franchise other than in accordance with the provisions of this chapter,' the franchisor shall offer to repurchase the franchisee's inventory." Boat & Motor Mart v. Sea Ray Boats, Inc., 825 F.2d 1285, 1290 (9th Cir. 1987) (quoting Cal. Bus. & Prof. Code, § 20035). This is the exclusive remedy for such a violation. Id. at 1291 ("The Act itself provides no remedy . . . except repurchase."). At the hearing, Plaintiffs indicated that some inventory may exist. Consequently, the Court dismisses Plaintiffs' CFRA claim with leave to amend.

### 7. Plaintiffs are granted leave to amend to assert a claim pursuant to Cal. Corp. Code § 31300

At the hearing, Plaintiffs requested leave to amend to assert a claim for rescission pursuant to Cal. Corp. Code § 31300 for failure to disclose material facts in the franchise disclosure documents. Plaintiffs argue that Defendants should have disclosed that under California law, their "clients could be deemed to be employers under Employment Development Department regulations, among others." (Supp. Letter at 1.) After considering the arguments presented in the Parties' supplemental letter, the Court grants Plaintiffs leave to amend to assert this claim.

## III. MOTION TO SEVER

Defendants move pursuant to Federal Rule of Civil Procedure 21 to sever Plaintiffs' claims into separate actions for each Plaintiff group. "Rule 20(a) of the Federal Rules of Civil Procedure . . . permits the joinder of plaintiffs in one action if: (1) the plaintiffs assert any right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there are common questions of law or fact." Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997). If Plaintiffs fail to meet these requirements, "a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." Id. (citing Fed. R. Civ. P. 21).

The Ninth Circuit "has described the term 'transaction or occurrence' as referring to 'similarity in the factual background of a claim'; claims that 'arise out of a systematic pattern of events' arise from the same transaction or occurrence." Bautista v. Los Angeles Cnty., 216 F.3d

837, 842-43 (9th Cir. 2000) (Reinhardt, J. concurring) (quoting Coughlin, 130 F.3d at 1350). Here, the complaint alleges that Defendant Griswold engaged in a series of similar misrepresentations to each of the Plaintiff groups. The complaint is premised on six specific misrepresentations that employees of Defendant Griswold made. (Cmplt. ¶ 20.) Plaintiffs allege that various employees of Defendant Griswold made some or all of these representations to each of the Plaintiff groups. (See id. ¶ 21.) Significantly, Plaintiffs allege that most of the misrepresentations were made to most of the Plaintiff groups. (Id.) Furthermore, in addition to the six core misrepresentations, Plaintiffs also allege that they were told at a training that Defendant Griswold "was different from other franchises, that in over 30 years no Client was found to be an employer of a caregiver, and that [Defendant Griswold] had been audited by the IRS, various departments of labor and workers' compensation, and other state and local organizations and that the IC model had always withstood these audits since it was time-tested and based upon expert legal advice." (Id. ¶ 23.) Plaintiffs also allege that at training they were given a "Silver Bullets" document which "emphasized the legality of the independent contractor model." (Id. ¶ 24.) Plaintiffs further allege that as part of the Franchise Agreements, they were given a form called "Information on Relationships" that included alleged misrepresentations about the IC model, including that Defendant Griswold "has received confirmation of the Caregivers' independent contractor status via [an] ss-8 ruling from the Internal Revenue Service." (Id. ¶ 25.)

These allegations regarding Defendant Griswold are similar to those in Burgo v. Lady of America Franchise Corp, 05-cv-518, Dkt. 54 (C.D. Cal. April 19, 2006), where the court denied a motion to sever. At issue in Burgo were similar misrepresentation claims brought by franchisees against a franchisor. Like here, the plaintiffs alleged that various misrepresentations were made at "Discovery Days" that plaintiff groups attended. Burgo, Dkt. 54 at 5. Also like here, the plaintiffs alleged that various representatives of the franchisor individually made misrepresentations "to many of the Plaintiff groups," including about the legality of the franchise model. Id. Furthermore, the Burgo plaintiffs alleged that a uniform document was distributed to all the plaintiff groups that contained a number of misrepresentations. Defendants' attempts to distinguish Burgo are unavailing. While it is true that Burgo involved a uniform document that

13

was distributed to all Plaintiff groups, the decision does not indicate that this document alone was dispositive. Plaintiffs have alleged that several misrepresentations were made to all Plaintiff groups and have noted other misrepresentations that were made to most Plaintiff groups. Plaintiffs have also pointed to at least two documents that contained misrepresentations that they all received. This case is thus substantially similar to Burgo.

Additionally, the cases Defendants cite are distinguishable. Visendi v. Bank of America, 733 F.3d 863 (9th Cir. 2013), involved allegations of deceptive mortgage practices brought by 137 plaintiffs in various states against 25 financial institutions. Similarly, Martinez v. Encore Credit Corp., 2009 WL 3233531, at *1 (C.D. Cal. Sept. 30, 2009), involved "19 individual Plaintiffs . . . fil[ing] suit against 26 Defendants on claims arising from separate mortgages on 15 distinct properties." Furthermore, Mesa Computer Utilities, Inc. v. W. Union Computer Utilities, Inc., 67 F.R.D. 634 (D. Del. 1975), does not, as Defendants suggest, hold that joinder is only appropriate when a franchisor submits documents containing identical misrepresentations to its franchisees.

However, as Defendants correctly note, this analysis is markedly different for the Individual Defendants, who Plaintiffs do not even allege had any contact whatsoever with all of the Plaintiff groups. As stated above, the Court dismisses the complaint as to the Individual Defendants with leave to amend. Thus, it is unclear if the Individual Defendants will remain in the case. At this stage, therefore, the Court is inclined to agree with the Mesa court's suggestion that "[t]he more prudent course of action . . . dictates deferral of a decision until the record more fully reflects the relationship between the joined parties and their respective claims . . . . At the pleading stage, joinder should have little, if any, prejudicial effect, hence, even 'marginally related' parties should be permitted to join if consistent with the promotion of judicial economy." Id. at 637-38. Consequently, the Court denies Defendants' motion to sever without prejudice.

**IV. CONCLUSION**

Defendants' motion to dismiss is GRANTED in part and DENIED in part. The complaint is dismissed as to the Individual Defendants with leave to amend. Furthermore, Plaintiffs' CFRA claims are dismissed with leave to amend. The Court also grants Plaintiffs leave to amend to assert a claim pursuant to Cal. Corp. Code § 31300. Any amended complaint shall be filed no

14

later than January 6, 2015.  Additionally, Defendants' motion to sever is denied without prejudice.

**IT IS SO ORDERED**.

Dated: December 16, 2014

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge